IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

```
_____  )
                                 )
INTERNATIONAL LONGSHORE AND      )
WAREHOUSE UNION, LOCAL 142,      )
                                 )
                 Petitioner,     )
                                 )   Civ. No. 12-00708 ACK-RLP
         vs.                     )
                                 )
GRAND WAILEA RESORT HOTEL & SPA, )
                                 )
                 Respondent.     )
_____  )
                                 )
GRAND WAILEA RESORT HOTEL & SPA, )
                                 )
                 Counterclaimant,)
                                 )
         vs.                     )
                                 )
INTERNATIONAL LONGSHORE AND      )
WAREHOUSE UNION, LOCAL 142,      )
                                 )
                 Counter Defendant.)
_____  )
```

**ORDER (1) DENYING PETITIONER/COUNTER-DEFENDANT'S MOTION FOR SUMMARY JUDGMENT TO VACATE THE ARBITRATION AWARD AND (2) GRANTING RESPONDENT/COUNTERCLAIMANT'S COUNTER-MOTION FOR SUMMARY JUDGMENT TO CONFIRM THE ARBITRATION AWARD**

**PROCEDURAL BACKGROUND**

On December 31, 2012, Petitioner International Longshore and Warehouse Union, Local 142 ("Petitioner," "ILWU," or "Union") filed a Petition to Vacate Arbitration Award ("Petition") that had been issued in favor of Respondent Grand Wailea Resort Hotel & Spa ("Respondent" or "Grand Wailea").  ECF

No. 1.  The arbitration award had been issued by Judge Riki May Amano ("Arbitrator") on October 3, 2012 in the arbitration entitled "In the Matter of the Arbitration Between ILWU Local 142, AFL-CIO on behalf of Brian Santore, Union v. Grand Wailea Resort and Spa, Employer" ("Arbitration Award").  Id. at 2, ¶ 2. Petitioner also filed a Concise Statement of Facts on December 31, 2012 in support of its Petition ("Petitioner's CSF").  ECF No. 4.

On April 15, 2013, Petitioner filed a Motion for Summary Judgment regarding its Petition to vacate the Arbitration Award ("MSJ").  ECF No. 20.  In its MSJ, Petitioner included a new Concise Statement of Facts ("Petitioner's MSJ CSF") in addition to referencing the Concise Statement of Facts filed with the Petition on December 31, 2012.  Id.  On August 9, 2013, Respondent filed its Opposition to Petitioner's MSJ and a Counter-Motion for Summary Judgment to Confirm the Arbitration Award ("Counter-MSJ").[1/]  ECF No. 23.  Respondent also filed a Concise Statement of Facts in Support of its Counter-MSJ.  ECF No. 24.  On August 16, 2013, Petitioner filed its Reply to

---

[1/]  Under Local Rule 7.9, parties are allowed to file counter motions raising the same subject matter as the original motion.  In this case, Respondent's Counter-Motion for Summary Judgment to confirm the Arbitration Award involves the same subject matter as Petitioner's Motion for Summary Judgment to vacate the Arbitration Award.  If the Award should be vacated, it should not be confirmed; conversely, the Award should be confirmed if Petitioner cannot establish that the Award should be vacated.

Respondent's Opposition and Counter-MSJ.  ECF No. 26.  On August
23, 2013, Respondent filed its Reply in support of its Counter-
MSJ.  ECF No. 27.  The Court held a hearing regarding
Petitioner's MSJ and Respondent's Counter-MSJ on August 30, 2013.
ECF No. 28.

## FACTUAL BACKGROUND[2/]

Grand Wailea operates a resort hotel and spa located in
Wailea, Hawaiʻi.  Arbitration Award at 3, Petitioner's CSF Ex. A,
ECF No. 4; Petitioner's MSJ at 2, ¶ 2, ECF No. 20.  As part of
its services, the hotel operates a Grand Dining Room that serves
breakfast to approximately 500 guests on a daily basis.  Id.
Servers are assigned to tables in the Grand Dining Room.  Id.  In
order to service large groups of guests, tables assigned to
different servers may be combined to seat the group.  Id.  The
tip is split equally among the number of servers who serve the
group.  Id.  The employees at Grand Wailea are aware of the
practice of sharing tips.  Id.

With respect to combined tables, because only one
server may input an order and complete the transaction at the

---

[2/]  Because this Court is required to defer to the
Arbitrator's findings of fact, the Court primarily draws the
facts of this case from the Arbitration Award.  United
Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29,
36, 108 S. Ct. 364, 370, 98 L. Ed. 2d 286 (1987) and Stead Motors
of Walnut Creek v. Auto. Machinists Lodge No. 1173, Int'l Ass'n
of Machinists & Aerospace Workers, 886 F.2d 1200, 1207 (9th Cir.
1989) (en banc).

register, the server who rings up the order is responsible for "tipping out" the other servers and bussers. Id. at 4. The server who inputs the order ("tipping server") "tips out" the other server ("tipped out server") by determining the amount of the tips to be shared among the servers and noting the amount of tips on a form called the "Daily Record of Tip Outs to Other Employees" ("Tip Out Sheet"). The tipping server writes the name of the tipped out server and the amount of the tip on the Tip Out Sheet. Id. The tipped out server signs the Tip Out Sheet and inserts his or her employee number to acknowledge that the Sheet accurately reflects his or her share of the tip. Id. Employees at Grand Wailea understand that a server may not add his or her name and a tip amount to another server's Tip Out Sheet without the tipping server's knowledge and approval. Id. The standard practice is for the tipping server to give a copy of the guest bills to the tipped out employee for his or her records. Id.

Brian Santore and Debbie Hammer were both servers at Grand Wailea during the time of the incident giving rise to this litigation. Arbitration Award at 4, Petitioner's CSF Ex. A, ECF No. 4. On January 12, 2011, Santore and Hammer combined tables from their respective sections to service two large groups of customers. Id. Hammer was the tipping server because she processed the orders at the register. Id. Hammer testified that, near the end of her shift, she printed copies of the guest

-4-

bills for the two shared tables and gave them to Santore.  Id.
She also wrote the tip out amount she was giving Santore on one
of the two bills.  Id.  At the end of her shift, she filled out
her Tip Out Sheet to reflect that Santore should receive a tip of
$46.30.  Id. at 5.  While the parties dispute the time when
Santore signed Hammer's Tip Out Sheet,[3/] the Arbitrator
apparently found that Santore had signed the Tip Out Sheet in the
signature box acknowledging that the $46.30 was the correct tip
amount.  Id. at 5-6, Respondent's CSF Ex. 5, ECF No. 24.

On January 13, 2011, Santore and Hammer did not share
tables.  Id.  Hammer had reported $40.00 on her Tip Out Sheet to
reflect two $20.00 tips to two bussers.  Id. at 6.  Santore
testified that he wrote in a tip amount of $50.00 on Hammer's Tip
Out Sheet and signed for the tip.  Id.  Santore did not obtain
Hammer's permission to adjust her Tip Out Sheet.  Id. at 7.  The
Accounting Department crossed out Hammer's $40.00 tip out total
and entered a figure of $90.00 based on Santore's actions.  Id.
at 7.  As a result, Santore received $50.00 from Hammer's
paycheck.  Id. at 10.

In late January or early February 2011, Hammer
discovered that $50.00 was missing from her paycheck for the pay

_____

[3/]  Santore stated that he had signed Hammer's Tip Out Sheet
before Hammer listed the amount of the tip owed to Santore.
Arbitration Award at 5, Petitioner's MSJ Ex. A, ECF No. 4.
Hammer testified that, when she had filled out the Tip Out Sheet,
Santore had not yet signed the sheet.  Id.

period covering January 12 and 13, 2011.  Id. at 7.  Hammer was injured and did not return to work until the end of February, 2011.  Id.  After returning to work, Hammer reported the discrepancy to the Accounting Department.  Id.  The Accounting Department provided Hammer with a copy of her paperwork.  After evaluating her records, Hammer believed that Santore had taken a $50.00 tip from her on January 13, 2011.  Id.

Hammer then reported Santore's theft to Human Resources on March 3, 2011 and met with Leah Belmonte, the Assistant Director of Human Resources.[4/]  Id. at 7.  After a manager called Hammer regarding her complaint, Hammer submitted a written statement to her supervisor.  Id. at 8.  On March 7, 2011, Hammer met with Belmonte about her statement and complaint.  Id.  After Hammer met with Belmonte, Hammer also met with Cliff Caesar, the Director of Human Resources.  Id.

Caesar commenced an investigation on March 8, 2011. Id.  The Arbitrator specifically found that the investigation conducted was "objective and fair."  Id. at 16.  As part of the

---

[4/]  Petitioner states that Santore never personally received a Section 26.f notice informing him of his infraction. Petitioner's MSJ CSF at 6, ¶ 30.  The Court notes once again that the Arbitrator does not provide explicit factual findings regarding a Section 26.f notice.  Respondent also submits evidence from the record that Grand Wailea's and ILWU's practice is for Grand Wailea to submit the 26.f notice to ILWU, who in turn talks to the employee and gives the employee a copy. Respondent's CSF at 6, ¶ 18, ECF No. 24, Arbitration Transcript at 1149, lines 7-20, Petitioner's CSF Ex. C, ECF No. 4.

investigation, Caesar spoke with Hammer and another server at the Grand Wailea.  Id. at 9.  On March 8, 2011, Caesar met with Santore and ILWU agent Steven West.  Id.  During the March 8 meeting, Santore acknowledged writing his name and the $50.00 tip on Hammer's Tip Out Sheet.  Id.  Santore also acknowledged that it would be wrong for a server to fill out another employee's Tip Out Sheet without that employee's knowledge and approval.  Id.

After conducting the interviews and reviewing the records, Caesar concluded that Santore had impermissibly taken $50.00 from Hammer.  Id. at 11.  Additionally, Santore had previously been disciplined by the Grand Wailea for grabbing blueberries from the kitchen with his bare hands in violation of kitchen and food safety policies.  Petitioner's CSF Ex. E, Ex. 19, ECF No. 4.  When questioned about his actions, Santore became aggressive and argumentative, resulting in a four-day suspension. Arbitration Award at 16, Petitioner's CSF Ex. A, ECF No. 4; Petitioner's CSF Ex. E, Ex. 19, ECF No. 4.  As a result of the investigation, Grand Wailea terminated Santore's employment on March 15, 2011.[5/]  Respondent's CSF at 6, ¶ 20, ECF No. 24,

---

[5/]  Petitioner also argues that there are facts in the record that Santore served as a union steward and filed numerous grievances under the CBA against Grand Wailea.  Petitioner's MSJ CSF at 2-3, ¶ 6-15, ECF No. 20.  Petitioner argues that these facts prove that Santore was discharged because of his union activities.  See Petitioner's MSJ at 24-25, ECF No. 20.  However, the Arbitrator found that the Grand Wailea's investigation regarding Santore's misconduct was "objective and fair."

(continued...)

Petitioner's MSJ CSF at 2, ¶ 4, ECF No. 20.   Grand Wailea has

consistently taken a hard stand on theft by terminating the

employment of past employees who committed theft.   Arbitration

Award at 16, Petitioner's CSF Ex. A, ECF No. 4.

Santore is a member of the ILWU.   <u>Id.</u> at 2.   The ILWU

and Grand Wailea had entered into a collective bargaining

agreement that was effective from April 1, 2008 through March 31,

2013 ("CBA").   Petitioner's CSF Ex. B, ECF No. 4.   ILWU

challenged the discharge of Santore, resulting in an arbitration

after the completion of the other stages of the grievance

process.   <u>Id.</u>   After six days of hearings, the Arbitrator issued

her decision on October 3, 2012.   Respondent's CSF at 6-7, ¶ 22,

ECF No. 24; Arbitration Award at 17, Petitioner's CSF Ex. A, ECF

No. 4.

The parties stipulated that the Arbitrator would decide

the following issues:

> 1. Was Brian Santore terminated for just cause under
> the CBA?

---

[5/] (...continued)
Arbitration Award at 16, Petitioner's CSF Ex. A, ECF No. 4.
Moreover, the Arbitrator did not mention any of Petitioner's
"facts" in her decision.   <u>See</u> <u>generally</u>, Arbitration Award,
Petitioner's CSF Ex. A, ECF No. 4.   While the Court mentions
Petitioner's "facts" to provide context for its analysis in this
order, the Court declines to "supplement" the Arbitrator's
factual findings by adopting Petitioner's version of the facts.
<u>See</u> <u>Stead Motors of Walnut Creek</u>, 886 F.2d at 1207 (9th Cir.
1989) (en banc) (holding that a court should not supplement an
arbitrator's factual findings with its own version of the facts).

2. If not, what is the appropriate remedy?

Arbitration Award at 17, Petitioner's CSF Ex. A, ECF

No. 4.

In determining whether or not Grand Wailea terminated

Santore for just cause, the Arbitrator examined Section 26.a of

the CBA, which states in relevant part as follows:

> 26.a  Employees shall be subject to suspension or
> discharge by Hotel for insubordination, pilferage,
> drunkenness, incompetence, willful failure to perform
> work as required, violation of the terms of this
> Agreement, failure to observe safety rules and
> regulations and Hotel's house rules and standards,
> which shall either be conspicuously posted or placed in
> the Associates' Handbook . . .
>
> Id. at 2.

In conjunction with Section 26.a, the Arbitrator also

examined Grand Wailea's Team Member Handbook, which prohibits,

inter alia, the following acts:

> Theft, attempted theft, removal, or unauthorized
> possession of any property without proper approval,
> such as food, Company property, property of another
> team member or guest.
>
> Misappropriation of Company funds and failure to handle
> funds in accordance with established guidelines;
> falsifying or altering or making material omissions in
> any Company document or record, including but not
> limited to, time cards, employment records, guest
> checks and tip reports.
>
> Id.

Based upon the record before her, the Arbitrator issued findings of fact including the facts as described above and ruled that Santore had been terminated for just cause.[6/]   Id.

**STANDARD**

## I. Summary Judgment

A party may move for summary judgment on any claim or defense - or part of a claim or defense - under Federal Rule of Civil Procedure ("Rule") 56.  Summary judgment "should be granted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  Maxwell v. Cnty. of San Diego, 697 F.3d 941, 947 (9th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)).  Under Rule 56, a "party asserting that a fact cannot be or is genuinely disputed must support the assertion," either by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce

---

[6/]   Respondent identifies evidence in the record that, following his termination from Grand Wailea, Santore filed claims with various federal (Department of Labor, Equal Employment Opportunity Commission) and state agencies (Department of Labor and Industrial Relations, Hawaii Civil Rights Commission) alleging that his termination was in retaliation for reporting employer violations of the law.  Respondent's MSJ at 21, n. 8, ECF No. 23, Arbitration Transcript at 460-465, Petitioner's CSF Ex. C, ECF No. 4.  The agencies dismissed Santore's claims after investigating them.  Id.  However, the Arbitrator does not reference these "facts" in her Award, so the Court declines to "supplement" the Arbitrator's factual findings with additional "facts".  See Stead Motors of Walnut Creek, 886 F.2d at 1207.

admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

The substantive law determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law properly preclude the entry of summary judgment." Nat'l Ass'n of Optometrists & Opticians v. Harris, 682 F.3d 1144, 1147 (9th Cir. 2012). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Scott v. Harris, 550 U.S. 372, 380 (2007) (citation omitted).

A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." United States v. Arango, 670 F.3d 988, 992 (9th Cir. 2012) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)). Conversely, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott, 550 U.S. at 380.

The moving party has the burden of persuading the court as to the absence of a genuine issue of material fact. Avalos v.

<u>Baca</u>, 596 F.3d 583, 587 (9th Cir. 2010).[7/]  If the moving party satisfies its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Sluimer v. Verity, Inc.</u>, 606 F.3d 584, 587 (9th Cir. 2010).  The nonmoving party must present evidence of a "genuine issue for trial," Fed. R. Civ. P. 56(e), that is "significantly probative or more than merely colorable."[8/]  <u>LVRC Holdings LLC v. Brekka</u>, 581 F.3d 1127, 1137 (9th Cir. 2009) (citation omitted).  Summary judgment will be granted against a party who fails to demonstrate facts sufficient to establish "an element essential to that party's case and on which that party will bear the burden of proof at trial." <u>Parth v. Pomona Valley</u>

---

[7/]  When the party moving for summary judgment would bear the burden of proof at trial, the movant must present evidence which would entitle it to a directed verdict if the evidence were to go uncontroverted at trial. <u>Miller v. Glenn Miller Prods.</u>, 454 F.3d 975, 987 (9th Cir. 2006) (citation omitted).  In contrast, when the nonmoving party would bear the burden of proof at trial, the party moving for summary judgment may meet its burden by pointing out the absence of evidence from the nonmoving party. <u>Id.</u> (citation omitted).

[8/]  The Ninth Circuit has noted that "Legal memoranda and oral argument, in the summary-judgment context, are not evidence, and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment." <u>Flaherty v. Warehousemen, Garage and Service Station Emp. Local Union No. 334</u>, 574 F.2d 484, 486 n.2 (9th Cir. 1978), <u>see also</u> <u>Barcamerica Intern. USA Trust v. Tyfield Importers</u>, 289 F.3d 589, 593 n.4 (9th Cir. 2002).  Additionally, allegations in the plaintiff's complaint "do not create an issue against a motion for summary judgment supported by affidavit." <u>Flaherty</u>, 574 F.2d at 486 n.2.

<u>Hosp. Med. Ctr.</u>, 630 F.3d 794, 798-99 (9th Cir. 2010) (citation omitted).

When evaluating a motion for summary judgment, the court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." <u>Scott v. Harris</u>, 550 U.S. 372, 378 (2007).  The court may not, however, weigh conflicting evidence or assess credibility.  <u>In re Barboza</u>, 545 F.3d 702, 707 (9th Cir. 2008).[9/] Accordingly, if "reasonable minds could differ as to the import of the evidence," summary judgment will be denied.  <u>Anderson</u>, 477 U.S. at 250-51.

## II. Arbitration Award

According to the Ninth Circuit, "because federal labor policy strongly favors the resolution of labor disputes through arbitration, [j]udicial scrutiny of an arbitrator's decision is extremely limited." <u>Matthews v. Nat'l Football League Mgmt. Council</u>, 688 F.3d 1107, 1111 (9th Cir. 2012).  Generally, awards

_____

[9/]  Nonetheless, a "conclusory, self-serving affidavit" that lacks detailed facts and supporting evidence may not create a genuine issue of material fact. <u>F.T.C. v. Neovi, Inc.</u>, 604 F.3d 1150, 1159 (9th Cir. 2010).  Moreover, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." <u>Scott</u>, 550 U.S. at 380.  "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." <u>Yeager v. Bowlin</u>, 693 F.3d 1076, 1080 (9th Cir. 2012).

are upheld "so long as they represent a plausible interpretation of the contract." Id.

"The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 36, 108 S. Ct. 364, 370, 98 L. Ed. 2d 286 (1987). Additionally, "a court is barred from disregarding the arbitrator's factual determinations, let alone supplementing them with its own, or from "correcting" an arbitrator's erroneous understanding of the law." Stead Motors of Walnut Creek v. Auto. Machinists Lodge No. 1173, Int'l Ass'n of Machinists & Aerospace Workers, 886 F.2d 1200, 1207 (9th Cir. 1989) (en banc).

Under the Labor Management Relations Act, an arbitration award may be vacated for the following reasons:  "(1) when the award does not draw its essence from the collective bargaining agreement and the arbitrator is dispensing his own brand of industrial justice; (2) where the arbitrator exceeds the boundaries of the issues submitted to him; (3) when the award is contrary to public policy; or (4) when the award is procured by fraud." S. California Gas Co. v. Util. Workers Union of Am., Local 132, AFL-CIO, 265 F.3d 787, 792-93 (9th Cir. 2001).

## DISCUSSION

**I.   Whether the Award Draws its Essence from the Collective Bargaining Agreement**

The Supreme Court has held that an arbitrator's award is legitimate if it "draws its essence from the collective bargaining agreement" and does not merely constitute "his own brand of industrial justice." Misco, 484 U.S. at 36, 108 S. Ct. at 370.  If the arbitrator is even "arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." Id., 484 U.S. at 38, 108 S. Ct. at 371.  In this case, the Arbitration Award indicates that the Arbitrator attempted to construe and apply the contract instead of distributing her own brand of industrial justice.

The parties stipulated that the following issues would be decided by the Arbitrator:  (1) "Was Brian Santore terminated for just cause under the CBA?" and (2) "If not, what is the appropriate remedy?"  Arbitration Award at 2, Petitioner's CSF Ex. A, ECF No. 4.  The Arbitrator proceeded to examine the CBA's provision regarding discharge and the Team Member Handbook's definition regarding theft.  See id. at 2.  There is nothing on the face of the Award to indicate that the Arbitrator substituted her own brand of industrial justice instead of attempting to construe the contract before her.

-15-

Instead, Petitioner points to alleged omissions in the Arbitration Award to argue that the Arbitrator impermissibly ignored the plain language of the CBA.  Petitioner's main contention appears to be that the Arbitrator "failed to outright consider, let alone acknowledge" certain sections of the CBA, namely Sections 1(d), 1(f), 26(d), and 26(f).  Petitioner's Reply at 3, ECF No. 26.  Petitioner appears to assume that the Arbitrator's failure to mention these sections automatically means that the Arbitrator impermissibly altered, amended, or modified key provisions of the CBA in violation of Section 28.b. Id.  The Court is not persuaded that the Arbitrator's decision failed to draw its essence from the CBA.

The Court first observes that the parties stipulated to the two issues set before the Arbitrator, which focused on whether just cause existed for Santore's termination based on theft and the falsification of business records.  Arbitration Award at 2, Petitioner's CSF Ex. A, ECF No. 4.  The Arbitrator identified the CBA provisions and House Rules that she thought applied to the just cause issue.  Id. at 2.

Judicial review of an arbitrator's interpretation of the scope of the issues submitted to him or her is limited and highly deferential.  Sheet Metal Workers' Int'l Ass'n Local Union No. 359 v. Madison Indus., Inc. of Arizona, 84 F.3d 1186, 1190 (9th Cir. 1996); Pack Concrete Inc. v. Cunningham, 866 F.2d 283,

285-86 (9th Cir. 1989); see Southern Cal. Gas Co. v. Utility

Workers Union of America, Local 132, AFL-CIO, 265 F.3d 787, 792-

94 (9th Cir. 2001).  In this case, the Arbitrator could plausibly

conclude that the Sections identified by Petitioner did not need

to be explicitly addressed in the Award because the stipulated

issues did not reference the content of those Sections.  While

Petitioner argued at the hearing that the Arbitrator was required

to mention Sections 1(d), 1(f), 26(d), and 26(f) because they

were listed in the first grievance; the Court is not required to

adopt Petitioner's interpretation of issues and requirements of

the CBA.  As Respondent pointed out at the hearing, Petitioner

listed seventeen sections of the CBA in the first grievance but

the parties stipulated to two issues by the time the grievance

reached arbitration.  Compare Petitioner's Ex. D, Ex. 3, ECF No.

4 with Arbitration Award at 2, Petitioner's CSF Ex. A, ECF No. 4.

Petitioner cannot now decide at this late date to cherry pick

certain Sections from the first grievance to overturn the

Arbitrator's Award.

        Additionally, Supreme Court and Ninth Circuit case law

explicitly holds that an arbitrator's failure to set forth his or

her reasoning or the fact that ambiguity may exist in his or her

reasoning is not a reason for vacatur.  See United Steelworkers

of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 597-98, 80 S.

Ct. 1358, 1361, 4 L. Ed. 2d 1424 (1960) and Bosack v. Soward, 586

F.3d 1096, 1104 (9th Cir. 2009) (citing <u>Wilko v. Swan</u>, 346 U.S. 427, 436, 74 S.Ct. 182, 98 L.Ed. 168 (1953), overruled in part on other grounds by <u>Rodriquez de Quijas v. Shearson/Am. Express, Inc.</u>, 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989)). Arbitrators are not required to give the reasons for their award. <u>Id.</u>  In this case, there is nothing to suggest that, on its face, the Award directly conflicts with the CBA.  <u>See Sheet Metal Workers' Int'l Ass'n Local Union No. 359 v. Madison Indus., Inc. of Arizona</u>, 84 F.3d 1186, 1190 (9th Cir. 1996) ("As long as the award "draws its essence" from the contract, meaning that on its face it is a plausible interpretation of the contract, then the courts must enforce it.").

        Regarding Section 1.d, Petitioner's arguments that the Arbitrator ignored the CBA's prohibition on anti-union animus is in reality a factual challenge.  The language in Section 1.d states that the "Hotel will not discourage participation in the Union or promote or finance any competing labor organization." CBA at 1, Petitioner's CSF Ex. B, ECF No. 4.  The Arbitrator's Award states that the CBA allows Grand Wailea to discharge Santore for theft and falsification of business records; this conclusion does not conflict with or otherwise re-write Section 1.d.  Moreover, the Arbitrator could have considered and concluded that there was no anti-union animus without explicitly setting forth her reasoning in her decision.  <u>See United</u>

-18-

Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. at 597-98 and Bosack, 586 F.3d at 1104.

Instead, the crux of Petitioner's argument is that the Arbitrator should have found that Santore was discharged on the basis of his union activities instead of finding that Santore was discharged because of theft and falsification of business records. See Petitioner's MSJ at 16, ECF No. 20 (arguing that the Arbitrator ignored "extensive testimony and evidence the Union presented" on anti-union animus). However, the Arbitrator made explicit factual findings that Grand Wailea discharged Santore as a result of the investigation regarding his theft and falsification of business records. Arbitration Award at 15, Petitioner's CSF Ex. A, ECF No. 4. As noted previously, the Arbitrator also found that the Grand Wailea's investigation regarding Santore's misconduct was "objective and fair." Id. at 16. This Court is not authorized to vacate the Award based upon a reconsideration of the merits, nor is the Court allowed to vacate the Award even if the Arbitrator committed an error in her fact-finding. See Misco, 484 U.S. at 36, 108 S. Ct. at 370. Accordingly, the Court declines to vacate the Award because of Petitioner's factual dispute with the Arbitrator.

Petitioner's arguments regarding Section 1.f also fail for various reasons. Section 1.f states as follows: "Hotel agrees that it will not practice favoritism or partiality to any

-19-

employee in the administration and application of this Agreement.
Any claim of favoritism or granted special privileges to any
employee in violation of the Agreement shall be promptly
addressed." CBA at 1, Petitioner's CSF Ex. B, ECF No. 4. The
Arbitrator's Award does not contain any interpretation of the CBA
allowing Grand Wailea to favor certain employees over others.
Instead, Petitioner argues that the Arbitrator should have found
that Grand Wailea treated Hammer more favorably than Santore
because, according to Petitioner's interpretation of the facts,
Hammer also committed theft. Petitioner's MSJ at 16, ECF No. 20.
The Court notes that Santore had a prior record of suspension and
that he admitted to taking the $50.00 and falsifying records;
whereas Petitioner claims that Hammer failed to give Santore
$2.51, which was disputed at the arbitration. See Arbitration
Award at 9-10, 16, Petitioner's CSF Ex. A, ECF No. 4;
Respondent's Opp. at 29-30, ECF No. 23; Arbitration Transcript at
1241-1243, Petitioner's CSF Ex. C, ECF No. 4. Petitioner's
argument is a factual dispute and does not indicate that the
Arbitrator decided not to apply the CBA. See Bosack v. Soward,
586 F.3d 1096, 1104 (9th Cir. 2009) (holding that appellant's
disagreement over arbitrator's factual findings or lack thereof
did not constitute grounds for vacating the award).

Additionally, both parties agreed at the hearing that
there is no evidence in the record that a grievance or formal

complaint was filed against Hammer.  As a result, it is questionable whether or not the issue was properly before the Arbitrator.  As mentioned above, assuming but not finding that the Arbitrator did not consider Plaintiff's allegations of theft by Hammer, the Arbitrator had the discretion to conclude that the favoritism provision did not fall within the scope of the issues before her.  See supra at 16-17.

In Southern California Gas Co., the Ninth Circuit upheld an arbitrator's decision that two employees' drug tests were improperly administered, even though the arbitrator also found that the employees had in fact been using illegal drugs. 265 F.3d at 792-93.  The employer argued that the award did not draw its essence from the collective bargaining agreement because the agreement allowed the employer to terminate employees for taking illegal drugs.  Id.  The Ninth Circuit observed that the issue of whether or not the employees actually took the drugs was not the issue submitted to the arbitrator - instead, the issue submitted involved whether the employer had followed proper drug testing procedures.  Id.  Because the arbitrator's decision on the issue submitted drew its essence from the agreement, the award was upheld despite other factual findings that would support termination under other provisions of the agreement.  Id.

In this case, the issue submitted to the Arbitrator involved whether Grand Wailea had just cause to discharge Santore

based on theft and the falsification of business records. Arbitration Award at 2, Petitioner's CSF Ex. A, ECF No. 4.  The Arbitrator was not requested to determine whether Grand Wailea violated Section 1.f of the CBA.  Id.

Grand Wailea also points out that the alleged $2.51 shortfall to Santore was not identified until after the arbitration commenced, which occurred some time after Santore was discharged.  Respondent's Opp. at 29, ECF No. 23.  Petitioner replies by arguing that Grand Wailea did not respond to Petitioner's discovery request in October of 2011; as a result, Hammer's checks were not entered into the record until the arbitration.  Petitioner's Reply at 9, ECF No. 26.

Even if the $2.51 had been discovered in October of 2011, the Arbitrator was not required to consider Hammer's alleged theft because the Arbitrator may decline to examine post-termination evidence.  See Aramark Facility Servs. v. Serv. Employees Int'l Union, Local 1877, AFL CIO, 530 F.3d 817, 830 (9th Cir. 2008).  In this case, Santore was discharged on March 15, 2011; the Arbitrator was not required to evaluate the issue of the $2.51 discrepancy in Hammer's checks that arose after this date.  See id.  While Petitioner argues that Grand Wailea should have evaluated a greater number of Hammer's tip records as a part of the investigation; the Court observes that the Arbitrator concluded that the investigation was "objective and fair."

Arbitration Award at 16, Petitioner's CSF Ex. A, ECF No. 4.  The
Court defers to the Arbitrator's factual finding regarding the
investigation.  And again, the Arbitrator might have considered
the aforesaid facts regarding the $2.51 claim and concluded in
favor of Grand Wailea without explicitly setting forth her
reasoning.  See United Steelworkers of Am. v. Enter. Wheel & Car
Corp., 363 U.S. at 597-98 and Bosack, 586 F.3d at 1104.  As a
result, the Court declines to vacate the Award based upon
Petitioner's favoritism argument.

     Petitioner next argues that the Arbitration Award
conflicts with the house rules because there was no published or
written policy on tip sharing, and Grand Wailea was required to
notify Petitioner of proposed changes in the rules.  Petitioner's
MSJ at 16-17, ECF No. 20.  However, the issue before the
Arbitrator was not whether Grand Wailea made an impermissible
rule change, but whether Santore committed theft and falsified
business records.  See Arbitration Award at 2, 13-14,
Petitioner's CSF Ex. A, ECF No. 4.  The Southern California Gas
Co. case explained above also applies to Petitioner's argument
regarding a written house rule.  See supra at 21 (citing 265 F.3d
at 792-94).  In this case, the Arbitrator was not required to
determine whether or not Grand Wailea created or changed a house
rule.  See Arbitration Award at 2, Petitioner's CSF Ex. A, ECF
No. 4.  The Arbitrator's Award drew its essence from the CBA

-23-

because the Arbitrator construed the CBA's provision on theft and falsification of business records.  Id. at 15.  In any event, the Court observes that Santore did not refute the existence of the rule; he "acknowledged that it is never appropriate to write on someone else's tip-out sheet without their approval." Arbitration Award at 16, Petitioner's CSF Ex. A, ECF No. 4. Moreover, the Arbitrator might have considered Petitioner's house rule argument and concluded in favor of Grand Wailea without explicitly setting forth her reasoning.  See United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. at 597-98 and Bosack, 586 F.3d at 1104.  Accordingly, the Court rejects Petitioner's argument.

Petitioner also asserts that the Arbitrator ignored Section 26.d, which states that the arbitrator "may" reduce, set aside, or change a discharge or suspension if such discharge or suspension was "improper or excessive."  CBA at 27, Petitioner's CSF Ex. B, ECF No. 4.  The Court rejects this argument because the Arbitrator explicitly found that "the degree of discipline in Santore's case was appropriate," not improper or excessive. Arbitration Award at 16, Petitioner's CSF Ex. A, ECF No. 4.  The Court is required to defer to the Arbitrator's factual findings regarding the appropriate discipline of employees.[10]  See Stead

---

[10]  The Court also observes that Petitioner merely asserts that the Arbitrator erred with respect to Section 26.d and does

(continued...)

<u>Motors of Walnut Creek</u>, 886 F.2d at 1213 (noting that an arbitrator has "broad authority to determine appropriate punishments and remedies") (citing <u>Misco</u>, 484 U.S. at 41, 108 S. Ct. at 372).

Lastly, Petitioner alleges that the Arbitrator ignored Section 26.f when she did not mention whether or not Brian Santore received notice of his infraction before meeting with Caesar on March 8, 2011.  Petitioner's MSJ at 13, ECF No. 20. Section 26.f states as follows:  "When a responsible management official at the facility receives information of an infraction allegedly committed by an employee, such official shall notify such employee and a Union designated representative within forty-eight (48) hours, excluding Saturdays, Sundays, and holidays that the case is being investigated and disciplinary action may be taken."  CBA at 27, Petitioner's CSF Ex. B, ECF No. 4.  According to the Arbitrator, Hammer went to Human Resources to report the incident at an unknown time on Thursday, March 3, 2011.[11/]  Under

---

[10/] (...continued)
not provide any explanation or citations to legal sources in its briefs to support the assertion.  <u>See</u> <u>generally</u>, Petitioner's MSJ at 15-29, ECF No. 20.

[11/] The Arbitrator did not make a finding of fact regarding the time when Hammer reported the incident.  Arbitration Award at 7, Petitioner's CSF Ex. A, ECF No. 4.

Petitioner's interpretation, Grand Wailea had until sometime on Monday, March 7 in order to give Santore the required notice.[12/]

As mentioned above, an Arbitrator need not provide the reasons for an award.  See United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 597-98, 80 S. Ct. 1358, 1361, 4 L. Ed. 2d 1424 (1960).  Instead, the Court need only determine whether the "arbitrator's solution can be rationally derived from some plausible theory of the general framework or intent of the agreement."  Tristar Pictures, Inc. v. Dir.'s Guild of Am., Inc., 160 F.3d 537, 540 (9th Cir. 1998).

In this case, Section 26.f does not require that the notice be written.  CBA at 27, Petitioner's CSF Ex. B, ECF No. 4. Nor does Section 26.f require the notice to contain a particular level of specificity regarding the alleged infraction.  See id. Petitioner urges this Court to find that the Arbitrator erred by not issuing a finding of fact that Santore failed to receive a Section 26.f notice or that the notice was insufficient. Petitioner's MSJ at 13-14, ECF No. 20.  While the Arbitrator did not explicitly mention her findings regarding notice, she did conclude that the investigation was "objective and fair."

---

[12/]  The Court takes judicial notice that March 3, 2011 is a Thursday, which is when Hammer met with Belmonte, the Assistant Director of Human Resources.  Because Section 26.f excludes Saturdays and Sundays within the 48 hour period, Monday, March 7 appears to be the deadline, assuming that Belmonte from Human Resources is a "responsible management official" as contemplated by the CBA.  CBA at 7, Petitioner's CSF Ex. B, ECF No. 4.

Arbitration Award at 16, Petitioner's CSF Ex. A, ECF No. 4.  This Court is not authorized to consider the merits of the award as to whether or not Grand Wailea violated Section 26.f or whether the Arbitrator erred by concluding that notice had been given.  See Misco, 484 U.S. at 39, see also Stead Motors of Walnut Creek, 886 F.2d at 1207 n. 7 (holding that it would be improper for a district court to make a factual finding contrary to the implicit findings of the arbitrator).

In Misco, an arbitrator ruled that a company was required to reinstate an employee because the evidence "was insufficient to prove" that the employee had possessed or used illegal drugs on company property.  Misco, 484 U.S. at 33-34. The company argued that the arbitrator committed "grievous error" by failing to find that the employee had in fact used drugs on company property.  Id. at 39.  While the court of appeals vacated the arbitration award after adopting the company's position, the Supreme Court reversed the court of appeals, noting that "improvident, even silly, factfinding" is not a basis for vacating an arbitration award.  Id.  In this case, even if the Arbitrator committed an error of fact in determining whether Santore received notice, the Court is not authorized to vacate the Award on this basis.

As another argument in support of upholding the Award, Respondent argues that the Arbitrator could plausibly interpret

-27-

the CBA to allow Grand Wailea to notify the employee by means of transmitting the 26.f notice to the Union.  Respondent's Opp. at 17, ECF No. 23.  The CBA does not require Grand Wailea to personally hand a notice to the employee.  See CBA at 27, Petitioner's CSF Ex. B, ECF No. 4.  Respondent cites to the arbitrator's decision in In re Reed Tool Co., 115 LA 1057 (Bankston, 2001) for the proposition that an arbitrator may use evidence of past practice "to indicate the proper interpretation of ambiguous contract language."  In re Reed Tool Co., 115 LA at 1061; see also Univ. of Hawaiʻi Professional Assembly v. Cayetano, 183 F.3d 1096, 1102 (9th Cir 1999) ("In construing a collective bargaining agreement, not only the language of the agreement is considered, but also past interpretations and past practices are probative.").  In this case, an agent of ILWU agreed that it was the "practice" of ILWU to discuss the Section 26.f notice with an employee and to give the employee a copy. See Petitioner's CSF Ex. C at 1149, lines 7-20, ECF No. 4.  The parties do not dispute that the ILWU received a Section 26.f notice for Santore.  See Petitioner's MSJ at 14, ECF No. 20; Respondent's Opp. at 30, ECF No. 23.  Thus, the Arbitrator could have determined that the ILWU and the employee were notified of the alleged infraction as contemplated by Section 26.f by means of Grand Wailea's and ILWU's "practice."  Such an interpretation is plausible regardless of whether the Court would have adopted a

different interpretation of the CBA.[13/]   See Aloha Motors, Inc. v.
ILWU Local #142, 530 F.2d 848, 849 (9th Cir. 1976) (holding that
an arbitrator's award must be upheld because the arbitrator's
interpretation was plausible, even if the court would have
interpreted the agreement differently).

        The Court also identifies two other CBA interpretations
by which the "arbitrator's solution can be rationally derived
from some plausible theory of the general framework or intent of
the agreement."   Tristar Pictures, Inc., 160 F.3d at 540.   First,
Section 26.f has a list of exceptions with respect to the 48 Hour
notice, including a section stating that "the 48-hour notice
shall not be applicable nor construed to apply to situations
involving ongoing investigations of employee conduct."   CBA at
27, ¶ 26.f, Petitioner's CSF Ex. B, ECF No. 4.   The Agreement
does not define what constitutes an "ongoing investigation."   See
generally, id.   It is possible that the Arbitrator may have

---

[13/]   The Court observes that the CBA also contains an Exhibit
"B" - Letter of Understanding dated May 27, 2009 that constitutes
an addendum to the terms of the CBA.   See Respondent's CSF Ex. 3,
ECF No. 24-4 at page 48 of 75.   In the Letter of Understanding,
paragraph 13 states that as follows:   "Section 26.f is hereby
clarified that notification to the employee of an investigation
into misconduct shall occur prior to the end of the second shift
after the employee returns to work."   Id.   Neither party has
discussed the effect of this paragraph on the 48-hour
requirement.   See generally, Petitioner's MSJ, ECF No. 20, and
Respondent's Opp., ECF No. 23.   The Court notes that the record
does not indicate if Santore had been notified prior to the end
of his second shift.   In any event, the addendum does not
indicate that the Arbitrator erred with respect to Section 26.f.

concluded that Caesar's investigation constituted an "ongoing investigation[] of employee conduct" that fell within an exception to Section 26.f's requirements.

      The Arbitrator also could have reached her solution if she considered Caesar to qualify as the "responsible management official" identified in Section 26.f.  Section 26.f requires the "responsible management official" to notify the employee and the union of an alleged infraction, but the CBA does not define "responsible management official."  See CBA at 27, ¶ 26.f, Petitioner's CSF Ex. B, ECF No. 4.  In her factual findings, the Arbitrator noted that Caesar, the Director of Human Resources, commenced the investigation into Santore's conduct.  Arbitration Award at 8, Petitioner's CSF Ex. A, ECF No. 4.  The Arbitrator also noted that Caesar "made the decision" that Santore's offense warranted termination.  Id. at 15.  With these facts, the Arbitrator could have concluded that Caesar was the "responsible management official" contemplated by Section 26.f.  With respect to the 48-hour notice, the Arbitrator indicated that Caesar received the information regarding Hammer's complaint and met with Hammer after she met with Belmonte on March 7, 2011.  Id. The Arbitrator also found that Caesar met with Santore and ILWU agent Steve West on March 8, 2011, the day after he received Hammer's information.  Id. at 9.  If Caesar constitutes the "responsible management official," then Caesar's meeting with

Santore met the notice requirement because notice was provided within 48 hours after Caesar received Hammer's information.  <u>See id.</u>

Petitioner argues that this Court should adopt an interpretation of Section 26.f requiring Grand Wailea to personally transmit a written Section 26.f notice directly to an employee.  Petitioner's Reply at 4, ECF No. 26.  However, the Court declines to vacate the Award on the basis of Petitioner's interpretation of the agreement even though the Arbitrator did not explicitly refer to Section 26.f.

The Ninth Circuit has stated that "[a]n award is legitimate if it draws its essence from the agreement and <u>only when the arbitrator's words manifest an infidelity to this obligation</u> may the courts refuse enforcement of the award." <u>Aloha Motors</u>, 530 F.2d at 849 (emphasis added), <u>see also</u> <u>Arch of Illinois, Div. of Apogee Coal Corp. v. Dist. 12, United Mine Workers of Am.</u>, 85 F.3d 1289, 1293 (7th Cir. 1996) ("before we reject an award because of language in the arbitrator's opinion, the opinion must unambiguously reflect that the arbitrator based his decision on noncontractual grounds").

In this case, the Arbitration Award does not contain any terms or words that contradict the plain language of the CBA. Because the Award "represents a plausible interpretation of the contract in the context of the parties' conduct," the Court

declines to adopt an interpretation that would create doubt as to the legitimacy of the Arbitrator's Award.  See Aloha Motors, 530 F.2d at 849, see also Arch of Illinois, 85 F.3d at 1293 (holding that ambiguity in arbitrator's opinion prevented the court from concluding that the arbitrator failed to interpret the agreement), Pan American Airways Corp. v. Air Line Pilots Assoc., Int'l, 206 F. Supp. 2d 12, 19 (D. D.C. 2002) ("A federal court does not have authority to adopt a different interpretation or choose a competing construction from that of the arbitrator.").

The four cases cited by Petitioner do not convince the Court to vacate the Award.  See Petitioner's Reply at 6-7 (citing United Food & Commercial Workers Union, Local 1119 v. United Markets, Inc., 784 F.2d 1413 (9th Cir. 1986), Federated Employers of Nevada v. Teamsters Local No. 631, 600 F.2d 1263 (9th Cir. 1979), Mountaineer Gas Co. v. Oil, Chemical, & Atomic Workers Int'l Union, 76 F.3d 606 (4th Cir. 1996), and United States Postal Service v. American Postal Workers Union, 204 F.3d 523 (4th Cir. 2000).  In each of Petitioner's cited cases, the arbitrator's award is distinguishable from the case before this Court because on its face the award contained an explicit factual finding or a remedy that conflicted with the plain language of the agreements.

In United Food & Commercial Workers Union, a collective bargaining agreement stated that a company would "no longer" be

able to use a classification if the company violated the agreement twice.  784 F.2d at 1414.  Notwithstanding the prohibition and the arbitrator's factual finding that the company had violated the agreement twice before, the arbitrator stated in his award that the company could use the classification unless a third violation occurred.  Id. at 1415-16.  Accordingly, the Ninth Circuit concluded that the arbitrator's award itself conflicted with the agreement.

In Federated Employers of Nevada, the agreement at issue stated that the arbitrator had to "select as his award either the last offer made by the Employers or the last offer made by the Union . . . with no modification or compromise in any fashion."  600 F.2d at 1264.  However, the arbitrator issued an award that was not the last offer made by the Employer or the Union.  Id.  As a result, the Ninth Circuit vacated the award because on its face it conflicted with the plain language of the agreement.

In both Mountaineer Gas Co. and United States Postal Service, the arbitrator's award contained findings of fact mandating a particular result under the agreement, but the arbitrators did not follow the result set forth in the agreement. See Mountaineer Gas Co., 76 F.3d 606 (requiring discharge after a positive drug test) and United States Postal Service, 204 F.3d 523 (barring probationary employees from filing grievances).

-33-

In contrast to the above cases, the Arbitrator's Award in this case does not contain a remedy that conflicts with the terms of the CBA, nor do the factual findings in the Award mandate a result under the CBA that the Arbitrator disregarded. See generally, Arbitration Award, Petitioner's CSF Ex. A, ECF No. 4. As noted above, Petitioner disagrees with the Arbitrator's conclusions because of differences in the interpretation of the facts, but Petitioner does not identify parts of the Award that on its face directly conflict with the CBA. As a result, the Court may not vacate the Award. See United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 597-98, 80 S. Ct. 1358, 1361, 4 L. Ed. 2d 1424 (1960) (holding that an award should be upheld unless the "arbitrator's words manifest an infidelity" to the obligation of construing the agreement), Association of Western Pulp & Paper Worker, Local 78 v. Rexam Graphic, Inc., 221 F.3d 1085, 1091 (9th Cir. 2000) ("when a CBA can be read in a manner consistent with the arbitrator's interpretation, it is not the job of the courts to second-guess arbitrators"). Accordingly, the Court DENIES Petitioner's MSJ to vacate the Award on the basis that the Award fails to draw its essence from the collective bargaining agreement.

**II.  Whether the Arbitrator Exhibited a "Manifest Disregard of the Law" in the Award**

Petitioner argues that the Arbitrator exceeded her authority by recognizing the applicable standard of law in her decision and then ignoring the standard. Petitioner's MSJ at 10-11, ECF No. 20. In the Award, the Arbitrator references Carroll R. Daugherty's seven-factor test used to determine whether an employer has just cause to discipline an employee ("Just Cause Test"). See Arbitration Award at 14, Petitioner's CSF Ex. A, ECF No. 4. Petitioner alleges that the Arbitrator disregarded two of the factors as explained below.

**A. Whether the Arbitrator Manifestly Disregarded the Law Regarding the Employer's Fair and Objective Application of the Rules Barring Theft and Falsification of Business Records**

Petitioner specifically argues that the Arbitrator erred when she applied the law for the sixth factor of the Just Cause Test, which states as follows: "Has the employer applied the rule fairly and without discrimination?" Arbitration Award at 14, Petitioner's CSF Ex. A, ECF No. 4. According to Petitioner, the Arbitrator manifestly disregarded the law because Hammer should have given Santore $48.81 instead of $46.30; in other words, Hammer owed Santore $2.51 in tips from another guest check. Petitioner's MSJ at 6, ECF No. 20. In Petitioner's view, Hammer committed a theft of $2.51 from Santore, and Grand Wailea did not apply the rule against theft fairly because Hammer

-35-

retained her job while Santore was discharged for the "same offense" of theft.  <u>Id.</u> at 11-12.

According to the Ninth Circuit, manifest disregard of the law constitutes more than "an error in the law" or "a failure on the part of the arbitrators to understand or apply the law." <u>Lagstein v. Certain Underwriters at Lloyd's, London</u>, 607 F.3d 634, 641 (9th Cir. 2010).  Instead, the record must indicate that the arbitrator "recognized the applicable law and then ignored it."  <u>Id.</u>  Specifically, the record must indicate that the arbitrator (1) was "aware of the law," and (2) "intentionally disregarded it."  <u>Bosack</u>, 586 F.3d at 1104.  In this case, the Award does not show that the Arbitrator intentionally disregarded the law.

First, the Arbitrator specifically noted that there were several incidents of employees who had been terminated for violating the rule prohibiting theft.  Arbitration Award at 14, Petitioner's CSF Ex. A, ECF No. 4.  The Arbitrator's consideration of these other theft incidents indicates that she did not disregard the rule.

Second, the Court observes that Petitioner's arguments are virtually identical to the CBA Section 1.f favoritism arguments discussed above in Section I of this order.  <u>See</u> Section I, supra at 19-23.  As a result, the Court's analysis in Section I concluding that (1) the issue was not properly before

the Arbitrator, (2) that the Arbitrator need not consider post-termination evidence, (3) that Petitioner's arguments impermissibly challenge the factual findings of the Arbitrator, and (4) that the Arbitrator need not state her reasoning in the Award applies with equal force to this section.  Id. Accordingly, the Court DENIES Petitioner's MSJ to vacate the Award on the basis that the Arbitrator disregarded the sixth factor of the Just Cause Test.

**B. Whether the Arbitrator Manifestly Disregarded the Law Regarding the Employer's Investigation**

Petitioner also argues that the Arbitrator manifestly disregarded the law regarding the fourth factor of the Just Cause Test, which is stated as follows:  "Was employer's investigation conducted fairly and objectively?"  Petitioner's MSJ at 13, ECF No. 20 (citing Arbitration Award at 14, Petitioner's CSF Ex. A, ECF No. 4).  Petitioner argues that the investigation was not "conducted fairly" because Santore was not given notice within the 48-hour time frame specified by the CBA in Section 26.f.  Id. at 13.  However, as the Court mentioned previously, the Arbitrator concluded that the investigation was "objective and fair."  Arbitration Award at 16, Petitioner's CSF Ex. A, ECF No. 4.  The Court is not inclined to overturn the Arbitrator's factual finding.

The Court once again notes that the Arbitrator did not explain her reasoning regarding Section 26.f's notice requirements.  The Ninth Circuit has observed that an arbitrator is not required to explain his or her reasoning supporting an award.  Bosack, 586 F.3d at 1104 (citing Wilko v. Swan, 346 U.S. 427, 436, 74 S.Ct. 182, 98 L.Ed. 168 (1953), overruled in part on other grounds by Rodriquez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 109 S.Ct. 1917, 104 L. Ed. 2d 526 (1989)).  Furthermore, the Ninth Circuit has held that, in cases where arbitrators do not provide explanations, "it is all but impossible to determine whether they acted with manifest disregard for the law."  Id. at 1104.  In this case, it is not clear that the Arbitrator ignored the law merely because of her lack of discussion about Section 26.f.

In the Arbitration Award, the Arbitrator examined facts about the fairness of the investigation such as Grand Wailea's evaluation of written statements, interviews with witnesses, and allowing Santore to explain his side of the story.  Arbitration Award at 15-16, Petitioner's CSF Ex. A, ECF No. 4.  Her examination of these facts indicates that she at least attempted to apply the law to the case before her instead of disregard it.  See Bosack, 586 F.3d at 1104.  As the Court noted in Section I, both parties agree that the Grand Wailea gave the ILWU a Section 26.f notice for Santore.  See Petitioner's MSJ at 14, ECF No. 20;

Respondent's Opp. at 30, ECF No. 23.  Additionally, the record contains evidence that an agent of ILWU agreed that it was the "practice" of ILWU to discuss the Section 26.f notice with an employee and to give the employee a copy.  See Petitioner's CSF Ex. C at 1149, lines 7-20, ECF No. 4.  The Arbitrator does not indicate in her decision that Section 26.f had been violated, and she was not required to disclose her reasoning regarding the Section.  The Court is not allowed to interpret the Arbitrator's silence as a manifest disregard of the law.  See Bosack, 586 F.3d at 1104 (holding that failure to make an explicit finding does not warrant vacatur, and that there must be evidence that the arbitrator "intentionally" disregarded the law).

Petitioner urges the Court to find that the Grand Wailea did not personally notify Santore before the March 8, 2011 meeting, and as a result, Section 26.f was violated.  See Petitioner's MSJ at 13, ECF No. 20.  However, the Court declines to do so because the Court should not reconsider the merits of the Award.  See Misco, 484 U.S. at 36, 108 S. Ct. at 370.  As previously discussed in Section I, the Arbitrator could have used a different interpretation of Section 26.f than Petitioner's interpretation.  See Section I, supra at 25-30.  Although the Arbitration Award does not provide an explicit explanation, it is also possible that the Arbitrator could have disagreed with Petitioner and decided that, based on the facts before her,

-39-

Santore received notice that met the requirements of Section 26.f.  As noted above, the Arbitrator's silence on this specific matter does not meet Petitioner's burden of showing that she disregarded the law.  See Bosack, 586 F.3d at 1104.  There must be some evidence of her intentional disregard for the law, and Petitioner's arguments about factual disputes does not support a conclusion that the Arbitrator disregard the law or that such disregard was intentional.  Therefore, the Court DENIES Petitioner's MSJ to vacate the Arbitration Award on the grounds that the Arbitrator manifestly disregarded the law.

**III.  Whether the Arbitrator's Award Violates Explicit, Well-Defined, and Dominant Public Policies Prohibiting Anti-Union Animus**

In order to vacate an arbitration award on public policy grounds, a court must find that (1) "an explicit, well defined and dominant public policy exists" and (2) "the policy is one that specifically militates against the relief ordered by the arbitrator."  Matthews v. Nat'l Football League Mgmt. Council, 688 F.3d 1107, 1111 (9th Cir. 2012).  The public policy "must be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests."  Id. Additionally, the alleged policy violation must be "clearly shown."  Aramark Facility Servs. v. Serv. Employees Int'l Union, Local 1877, AFL CIO, 530 F.3d 817, 823 (9th Cir. 2008).

Furthermore, the Court must "focus on the award itself, not the behavior or conduct of the party in question." S. California Gas Co., 265 F.3d at 795.  In this case, the question is whether the Arbitrator's Award, which allows for discharge when an employee commits theft and falsifies business records, is barred because of a specific public policy.  See id.

     Petitioner argues that the Award violates explicit, well-defined, and dominant federal and state public policies against "retaliatory discharge for anti-union animus and whistleblowing."  Petitioner's MSJ at 18, ECF No. 20.  Petitioner cites to the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(a)(1) and (3) for the proposition that there is a public policy prohibiting discharge for anti-union animus.  Id. at 19. Petitioner also cites to Hawaiʻi Revised Statutes § 378-62, which prohibits an employer from discharging an employee for reporting violations or suspected violations of the law to a public body. Petitioner's MSJ at 22, ECF No. 20.

     Assuming arguendo that Petitioner's identified policies are explicit and well-defined, the Court concludes that the Award does not violate these policies.  The Award on its face allows Grand Wailea to discharge Santore for theft and for falsifying business records; the Award does not allow Grand Wailea to discharge Santore because of his union or whistleblowing activities.  Arbitration Award at 14-16, Petitioner's CSF Ex. A,

ECF No. 4.  There is no public policy that "militates against the relief ordered by the arbitrator," namely, the Arbitrator's conclusion that Grand Wailea may discharge an employee for theft and falsifying business records.  Matthews, 688 F.3d at 1111.

In National Labor Relations Board v. Magnusen, the Ninth Circuit reversed an NLRB order requiring reinstatement of an employee who, inter alia, stole from his employer.  523 F.2d 643, 646 (9th Cir. 1975).  The Ninth Circuit specifically held that requiring reinstatement with backpay of an employee who committed theft "would not effectuate the policies of the [NLRA]."  Id.  The Ninth Circuit also cited cases from other circuits holding that an employer may discharge an employee for theft even if the employee was involved in union activities.  Id. (citing N.L.R.B. v. Com. Foods, Inc., 506 F.2d 1065 (4th Cir. 1974) (holding that employees who were illegally fired for engaging in union activities should not be reinstated to their jobs if on rehearing the Board determined that the employees stole from their employer), N.L.R.B. v. Breitling, 378 F.2d 663 (10th Cir. 1967) (holding that employer could discharge employee for theft), and N.L.R.B. v. Big Three Welding Equipment Co., 359 F.2d 77 (5th Cir. 1966) (holding that NLRB could not order reinstatement of employees who committed theft)), see also N.L.R.B. v. Brookshire Grocery Co., 919 F.2d 359 (5th Cir. 1990) (holding that employer could discharge employee under the NLRA

-42-

for taking company papers) and 6 West Limited Corp. v. N.L.R.B., 237 F.3d 767, 778 (7th Cir. 2001) (holding that employer's discharge of employee did not violate NLRA because "companies must be able to discharge a thief or an untruthful employee").

In this case, the Arbitrator specifically found that Grand Wailea could legitimately terminate Santore's employment because (1) Santore had intentionally taken Hammer's property, (2) Santore had knowingly falsified Hammer's Tip Out Sheet, and (3) Santore had a prior record of a four-day suspension for grabbing food with his bare hands in violation of food safety policies and exhibiting hostility when his actions were challenged. Arbitration Award at 16, Petitioner's CSF Ex. A, ECF No. 4. Petitioner does not contest the Arbitrator's finding that Santore did in fact falsify Hammer's Tip Out Sheet and take $50.00 from Hammer; these facts undercut all of Petitioner's arguments that Grand Wailea terminated Santore for an illegitimate reason. Participation in union activities does not insulate an employee from the consequences of stealing or falsifying records. See, e.g., Magnusen, 523 F.2d 643. The Court therefore concludes that the Arbitrator's Award allowing Grand Wailea to discharge Santore for theft did not violate public policy.

Petitioner once again attempts to raise a factual challenge by arguing that the theft and the falsification of

-43-

records was a "pretext" and that the real reason for the discharge was anti-union animus.  Petitioner's MSJ at 23-25, ECF No. 20, Petitioner's Reply at 11, ECF No. 26.  Petitioner argues that it is not asking the Court to "substitute its factual judgments for the arbitrator," but the Court disagrees with Petitioner's description of its argument.  Petitioner's Reply at 11, ECF No. 26.  For instance, Petitioner argues that Hammer's delay in bringing her complaint supports a finding of pretext because the complaint occurred around the time that a corrective action form regarding Santore's work attendance was issued. Petitioner's MSJ at 26, ECF No. 20.  However, the Arbitrator made express findings of fact that Hammer's delay in bringing her complaint resulted from her injury and her absence from work until the end of February 2011.  Arbitration Award at 7, Petitioner's CSF Ex. A, ECF No. 4.  The resolution of this factual matter has already been decided by the Arbitrator and will not be disturbed by this Court.  Misco, 484 U.S. at 36, 108 S. Ct. at 370.

The Court also observes that, in order to vacate the Award based upon Petitioner's public policy argument, the Court would need to find that (1) Grand Wailea's discharge of Santore for theft and falsifying records was pretextual and (2) that the reason for Santore's discharge was in reality anti-union animus or whistleblowing activities.  Both of these factual conclusions

-44-

would cast doubt on the Arbitrator's finding that Grand Wailea's decision "to terminate Santore is no different" from its previous terminations of employees who committed theft.  Arbitration Award at 16, Petitioner's CSF Ex. A, ECF No. 4.  The Court is not allowed to make such findings to vacate an arbitration award. See Stead Motors of Walnut Creek, 886 F.2d at 1207 n. 7 (holding that it would be improper for a district court to make a factual finding contrary to the implicit findings of the arbitrator) and General Teamsters v. Mitchell Bros. Truck Lines, 682 F.2d 763, 767 (9th Cir. 1982) (holding that the court should not redetermine the merits of a grievance by determining facts and applying the law).

Petitioner also argues that the Arbitrator "erred by failing to confront whether or not Santore was terminated for his union activity."  Petitioner's Reply at 11, ECF No. 26.  However, the Arbitrator's explicit factual findings regarding the reason for Santore's discharge provide ample support for concluding that the cause was not anti-union animus or whistleblowing activities. Arbitration Award at 16, Petitioner's CSF Ex. A, ECF No. 4.  Even if Petitioner's characterization of the Arbitrator's silence about anti-union animus and whistleblowing is correct, this Court may not set aside the Award because a lack of explanation or reasoning does not provide grounds to vacate an arbitration

award.  See Enter. Wheel & Car Corp., 363 U.S. at 597-98, 80 S.

Ct. at 1361 and Bosack, 586 F.3d at 1104.

Petitioner cites to several cases where the NLRB found

that the employer's discharge of an employee for reason of theft

was a pretext for firing the employee because of union

activities.  Petitioner's MSJ at 20-22, ECF No. 20.  However,

these decisions are all distinguishable from the present case

because the fact-finders in those cases concluded that the

employees were fired for conducting union activities, not because

of theft.  See Midnight Rose Hotel & Casino, Inc., 343 NLRB 1003,

1004 (2004),[14/] N.L.R.B. v. United Mineral & Chemical Corp., 391

F.2d 829, 833 (2d Cir. 1968),[15/] and N.L.R.B. v. Quick Shop

Markets, Inc., 416 F.2d 601, 605 (7th Cir. 1969).[16/]  The

---

[14/]  In Midnight Rose Hotel, the administrative law judge
concluded that the employee had not committed theft.  Midnight
Rose Hotel & Casino, Inc., 343 NLRB at 1004.

[15/]  In United Mineral & Chemical Corp., the Second Circuit
stated that the fact-finder could validly conclude based on
witness testimony that the theft had not occurred.  391 F.2d at
833.  In this case, the facts are clearly different because the
Arbitrator relied upon Santore's own admission that he had
improperly signed Hammer's Tip Out Sheet to obtain $50.00 from
Hammer.  Arbitration Award at 15, Petitioner's CSF Ex. A, ECF No.
4.

[16/]  In Quick Shop Markets, the Seventh Circuit agreed with
the fact-finder's conclusion regarding pretext and noted that the
employer did not care to investigate or determine the identity of
the employee responsible for the cash shortages. 416 F.2d at 605.
In contrast, Grand Wailea did investigate and identify that
Santore was the person who took $50 from Hammer's paycheck.
Arbitration Award at 15, Petitioner's CSF Ex. A, ECF No. 4.

reviewing courts in each case upheld the fact-finder's conclusions, which this Court is required to do when reviewing an arbitration award.  <u>Misco</u>, 484 U.S. at 36, 108 S. Ct. at 370.  In this case, the Arbitrator made a factual finding that the discharge occurred because of the theft and falsification of business records instead of Santore's union and whistleblowing activities, and this Court will not second-guess her conclusion. Accordingly, Petitioner's Motion for Summary Judgment to vacate the Award on the basis of public policy violations is DENIED.

**IV.  Whether This Court Should Grant Respondent Grand Wailea's Counter-Motion for Summary Judgment and Confirm the Arbitration Award**

Respondent Grand Wailea moves for this Court to confirm the Arbitration Award under 9 U.S.C. § 9, which states in relevant part that a party to an arbitration may apply to the court for an order confirming the award.  The court "must grant such order unless the award is vacated, modified, or corrected." 9 U.S.C. § 9.  For the reasons set forth above, the Court concludes that Petitioner fails to raise a genuine issue of material fact as to whether this Court should vacate the Arbitration Award.  Additionally, neither party has argued that the Award should be modified or corrected under 9 U.S.C. § 11. Accordingly, the Court GRANTS Respondent Grand Wailea's Counter-Motion for Summary Judgment and confirms the Arbitration Award.

## CONCLUSION

For the foregoing reasons, the Court (1) DENIES Petitioner International Longshore and Warehouse Union, Local 142, AFL-CIO's Motion for Summary Judgment to Vacate the Arbitration Award issued by Arbitrator Riki May Amano on October 3, 2012 in the arbitration entitled "In the Matter of the Arbitration Between ILWU Local 142, AFL-CIO on behalf of Brian Santore, Union v. Grand Wailea Resort and Spa, Employer" and (2) GRANTS Respondent Grand Wailea's Counter-Motion for Summary Judgment and CONFIRMS the aforementioned Arbitration Award.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, September 10, 2013.


_____
Alan C. Kay
Sr. United States District Judge


INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, LOCAL 142 v. GRAND WAILEA RESORT HOTEL & SPA, Civ. No. 12-00708 ACK-RLP: ORDER (1) DENYING PETITIONER/COUNTER-DEFENDANT'S MOTION FOR SUMMARY JUDGMENT TO VACATE THE ARBITRATION AWARD AND (2) GRANTING RESPONDENT/COUNTERCLAIMANT'S MOTION FOR SUMMARY JUDGMENT TO CONFIRM THE ARBITRATION AWARD.